**PUBLIC INFORMATION ACT – EDUCATION – PUBLIC SCHOOLS – PERSONNEL – DISCLOSURE OF PERSONNEL RECORDS PURSUANT TO COURT ORDER**

August 23, 1994

*Dr. Nancy S. Grasmick*
*Superintendent of Schools*
*Maryland State Department of Education*

You have requested our opinion regarding the application of provisions of the Maryland Public Information Act to the activities of a special Consent Decree Oversight Management Team (the "Management Team"), established by court order earlier this year to oversee the compliance of the Baltimore City School System ("BCPS") with a consent decree in a decade-old lawsuit challenging BCPS practices in educating students with disabilities. Specifically, you note that BCPS representatives on the Management Team are concerned that restrictions in the Maryland Public Information Act on the disclosure of personnel records may be violated if BCPS shares personnel information with other Management Team members.

For the reasons stated below, we conclude that disclosure within the Management Team of information and records concerning applicants for, and employees in, BCPS positions that are related to consent decree compliance does not violate the Public Information Act.

**I**

**Factual Background**

The issues raised in your request for an opinion arise in the context of a decade-long class action lawsuit in federal district court, *Vaughn G. v. Amprey*, Civil No. H-84-1911.[1] Filed by a group of Baltimore City school children represented by the Maryland Disability Law Center ("MDLC"), the suit alleged that BCPS had

---

[1] The questions of State law that we address are not part of the lawsuit itself, however.

violated federal special education laws in identifying and educating students with disabilities in the school system.

In early 1988, BCPS and MDLC entered into a far-reaching consent decree, which addressed many aspects of the education of students with disabilities and which required the appointment of a monitor to oversee BCPS's compliance with the decree's provisions. This consent decree has been modified and extended, but BCPS has never achieved substantial compliance with its terms. Major deficiencies in BCPS's adherence to federal and State special education laws were identified and reported in periodic consent decree monitoring reports and in a State-funded 1992 independent audit. In late 1993, BCPS's own compliance reviews of 16 schools once again affirmed the serious failures to comply with the consent decree and the federal and State special education laws upon which it was based.

On the eve of contempt proceedings in the federal district court on April 4, 1994, the parties to the *Vaughn G.* action agreed to a Stipulation and Order acknowledging that BCPS "is in substantial noncompliance with the material provisions of the 1992 Modified Consent Decree entered in this case." As part of the Stipulation and Order, the State Superintendent of Schools and the Maryland State Department of Education ("MSDE") were joined voluntarily as defendants in the case "in order to effectuate necessary relief." The order also established the Management Team, granting it "authority to make, review and direct all decisions affecting compliance with the Consent Decree." Finally, the April order dismissed with prejudice the plaintiffs' motion for contempt.

Pursuant to the Stipulation and Order, the Management Team comprises appointees of BCPS, MSDE, and MDLC. To date, BCPS Superintendent Dr. Walter G. Amprey and State Superintendent of Schools Dr. Nancy S. Grasmick have been actively involved in the Management Team's activities. Under the April order, "[f]or the purposes of carrying out their responsibilities, the non-BCPS members of the Team and their designees will have reasonable access to the premises and records of BCPS, including student records, and to staff as necessary on a confidential basis." April Order ¶4. The Management Team is to operate by consensus, and disputes among team members concerning actions and decisions by BCPS may be brought to the court, which has discretion to "grant relief if it determines that a proposed action or decision, considering all relevant circumstances, provides a reasonable basis for achieving increased compliance with the Consent Decree." April Order ¶5.

To date, only one dispute has arisen in which Management Team members have sought the court's intervention. That dispute concerned the extent of the Management Team's authority to participate in BCPS's personnel decision-making. In general, BCPS contended that the Management Team should have only an advisory role with respect to BCPS staffing decisions, and that even that role should be limited to a few high-level management positions with direct responsibility for compliance with the Consent Decree. The MDLC and MSDE members of the Management Team contended that, since more than 16% of BCPS students are students with disabilities, and these students attend schools across Baltimore City, any position above the level of teacher, including principals and area assistant superintendents, required Management Team review. Moreover, the MDLC and MSDE representatives believed that the Management Team should have the authority to approve all appointments to positions related to Consent Decree compliance. Ultimately, the Management Team members could not reach consensus regarding the Management Team's role in the personnel arena and, in June 1994, plaintiffs and MSDE filed a motion seeking the court's intervention.

The court resolved the impasse with its July 6, 1994 order. The order stated that the Management Team had the authority to determine whether a BCPS position was compliance-related and, therefore, within the scope of the Management Team's review. One part of the new order stated as follows:

> That before any steps are taken by BCPS to eliminate, create or retain any professional employee position above the level of teacher, or to place someone in or remove someone from such position, including but not limited to any Deputy Superintendent, Associate Superintendent, Assistant Superintendent, Director, Coordinator and Principal, BCPS will timely provide the Team with sufficient information about the position so that the Team can determine whether or not the final position affects compliance with the Consent Decree.

July Order ¶2. If a position is deemed by the Management Team not to be compliance-related, then BCPS can act unilaterally to take action with respect to it. If a majority of the Management Team determines that a position does affect compliance, however, then:

> the decision to eliminate, create or retain the professional employee position in question, or to place someone in or remove someone from such position, is to be made by the Superintendent only after receiving comments or a recommendation from a majority of the Team. It is understood and agreed that it is the Superintendent who has the ultimate authority to made said decision.

July Order ¶4. When the BCPS Superintendent makes a decision regarding such a position, the Superintendent must inform the Management Team and provide its members with a 10-day period during which a member may apply to the court for a stay of the personnel action. Ultimately, if a Team member disagrees with BCPS on a personnel action, and the court agrees that the position in question affects compliance with the Consent Decree, the disagreement is to be treated as a dispute according to the terms for dispute resolution established in the April 1994 order.

The Management Team is now attempting to develop a procedure for implementing the court's July order, and, as your letter indicates, the BCPS members are concerned that State law safeguards concerning the confidentiality of the personnel records of BCPS employees strictly limit the information that can be provided to non-BCPS members of the Management Team, without the applicant's or employee's consent. This opinion responds to that concern, first by exploring the confidentiality safeguards available to public employees in Maryland and second, by applying those legal protections to the Management Team's functions, in light of the court orders described above.

## II

### The Public Information Act

Access to the personnel files of BCPS employees is governed by Maryland's Public Information Act ("PIA"). *See* §10-611(f) of

the State Government ("SG") Article, Maryland Code (definition of "public record"). The intent of the PIA is to provide broad access to governmental records, and, toward that end, the statute "shall be construed in favor of permitting inspection of a public record ...." SG §10-612(b).

Public officials may deny access to a public record only under four circumstances outlined in the PIA. Under the first provision, denial of access is mandatory if:

> (1) by law, the public record is privileged or confidential; or
>
> (2) the inspection would be contrary to:
>
> > (i) a State statute;
> >
> > (ii) a federal statute or a regulation that is issued under the statute and has the force of law;
> >
> > (iii) the rules adopted by the Court of Appeals; or
> >
> > (iv) an order of a court of record.

SG §10-615. We know of no general constitutional, statutory, or judicially created legal mandate that would prohibit the public release of BCPS personnel information under this provision of the PIA.

SG §10-616 provides the second circumstance under which release of a public record is prohibited. That provision exempts categories of information, such as adoption, retirement, and welfare records, and explicitly includes personnel records. Specifically, the restriction on the release of personnel records reads as follows:

> (i)(1) Subject to paragraph (2) of this subsection, a custodian shall deny inspection of a personnel record of an individual, including an application, performance rating, or scholastic achievement information.

     (2)  A custodian shall permit inspection
by:

       (i)  the person in interest; or

       (ii)  an elected or appointed official
who supervises the work of the individual.

SG §10-616(i).  Obviously, any personally identifiable information regarding individual applicants for, and employees in, BCPS positions would fall within this provision.[2]  *See also* SG §10-616(d) (protecting "a letter of reference" from disclosure).

   Likewise, inspection of public records must be denied if the records contain certain types of information — specifically, medical, psychological, sociological, financial, and commercial information; licensing records; and the addresses and telephone numbers of public employees.  SG §10-617.  If a home address or telephone number were in a personnel file, as would usually be the case, disclosure of that information would be separately prohibited by SG §10-617(e).

   Finally, a fourth category in the PIA permits (but does not require) the custodian of a public record to deny access if inspection "would be contrary to the public interest ...," SG §10-618(a) and if the information falls into any classification, such as real estate appraisals, investigational records, and examination information, set out in the rest of SG §10-618.  The personnel information that is of concern to the Management Team does not fall into any of these categories.

   In sum, we believe that only SG §§10-616 and 10-617 contain language that might otherwise restrict the access of non-BCPS Management Team members to BCPS records regarding applicants for, and employees in, positions related to consent decree compliance.  However, the PIA's prohibitions on public disclosure, including the protections of §§10-616 and 10-617, are subject to an important condition.   The PIA requires a custodian of the information enumerated in SG §§10-616 and 10-617 to deny

---

  [2] Information about the salaries of public employee is subject to public disclosure. §10-611(f)(2).

inspection "[u]nless otherwise provided by law ...." SG §§10-616(a) and 10-617(a).

Were the Management Team an informal, voluntary creation of its members, then the prohibitions in these sections undoubtedly would limit the disclosure of personnel information to non-BCPS members. However, the Management Team was established and the scope of its authority delineated in orders of the federal district court. Thus, the question arises as to whether those court orders serve to permit inspection in that inspection is "otherwise provided by law." SG §§10-616(a) and 10-617(a).

### III

### Disclosure of BCPS Personnel Records to Management Team Members

As we have stated, "'the obvious purpose of [SG §10-616(i)] is to preserve the privacy of personal information about a public employee that is accumulated during his or her employment.'" 78 *Opinions of the Attorney General* 291, 293 (1993) (quoting 65 *Opinions of the Attorney General* 365, 367 (1980)). Toward that end, SG §10-616 limits access to personnel records "'to the person who is the subject of the file or to those persons who actually supervise or are directly responsible for the supervision of the person who is the subject of the file.'" 78 *Opinions of the Attorney General* at 294 (quoting 65 *Opinions of the Attorney General* at 368).

A series of Attorney General opinions has pointed out, however, that the "otherwise provided by law" exception authorizes access to confidential personnel and other records when a statute authorizes an official (the Legislative Auditor) to inspect records in order to carry out the official's duties. 76 *Opinions of the Attorney General* 287, 293 n.6 (1991); 63 *Opinions of the Attorney General* 453, 459 (1978); 60 *Opinions of the Attorney General* 554, 556-57 (1975).

We reach the same conclusion when a federal court order grants individuals access to personnel information in order to discharge their duties under the order. Under fundamental constitutional principles, it is axiomatic that "State law prohibitions against compliance with [a federal court's] decree cannot survive the command of the Supremacy Clause of the United States

Constitution." *Washington v. Washington State Comm'l Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695 (1979).[3]  A federal district court may require public agencies to take actions "even if state law withholds from them the power to do so." *Id.*  The supremacy of federal courts to vindicate federal rights is so clear that, "[e]ven if those orders may have been erroneous in some respects, all parties have an unequivocal obligation to obey them while they remain in effect."  443 U.S. at 696.

In sum, to the extent that a federal court order authorizes access to personnel information that would otherwise be protected from inspection by the PIA, that access is mandated by the Supremacy Clause.  It follows that such access is "otherwise permitted by law" and therefore proper.

While the recent *Vaughn G.* orders do not address explicitly access by non-BCPS Management Team members to personnel information, we believe that the orders must be construed to authorize such access.  First, paragraph 3 of the April order grants Management Team members broad rights of access to all types of BCPS records:  "For the purpose of carrying out their responsibilities, the non-BCPS members of the Team and their designees will have reasonable access to the records of BCPS, including student records ... on a confidential basis."  Those responsibilities are "to make, review and direct all decisions affecting compliance with the Consent Decree."  April Order ¶4.  The July order then directs BCPS officials, before making any personnel decisions regarding professional employees above the level of teacher, to "timely provide the Team with sufficient information about the position so that the Team can determine whether or not the final position affects compliance with the Consent Decree."  July Order ¶2.  If the Management Team deems the position to be compliance related, then BCPS cannot take any personnel action without first "receiving comments or a recommendation from a majority of the Team."  July Order ¶4.

Plainly, these court orders contemplate that the Management Team will have sufficient information to "make, review and direct all decisions affecting Consent Decree compliance" and that the Management Team's function will include review of personnel

---

[3] Article 2 of the Maryland Declaration of Rights also contains language recognizing the supremacy of federal law.

decisions concerning compliance-related BCPS positions. The provisions of the court order authorizing those functions are rendered meaningless if Management Team members are deprived of information regarding individual qualifications for, and performance in, relevant positions. The only reasonable conclusion to be drawn from the language in the orders regarding the Management Team's mission and its information access is that all Team members are authorized to inspect any information contained in the personnel files of an applicant for an employee in a compliance-related position, to the full extent that such information bears on the ability of that individual to meet consent decree requirements.[4]

The PIA does contain civil and criminal penalties for unlawful disclosure of protected records. Specifically, SG §10-626(a) provides that:

> A person, including an officer or employee of a governmental unit, is liable to an individual for actual damages and any punitive damages that the court considers appropriate if;
>
> (1) the person willfully and knowingly permits inspection or use of a public record in violation [the PIA]; and
>
> (2) the public record names or, with reasonable certainty, otherwise identifies the individual by an identifying factor such as:

---

[4] It is possible that some information contained in a personnel record may not be subject to disclosure pursuant to the court orders, if it is not relevant to the individual's suitability for a position in which he or she will be responsible for aspects of consent decree compliance. For example, information regarding a past salary dispute or a request for medical leave would not be relevant to the Management Team's review function. Information concerning an employee's qualifications and performance in past positions, in general, and in areas of special relevance under the consent decree, such as the employee's record in serving students with disabilities, meeting timeliness requirements, and maintaining positive relationships with the parents of students, would seem to be within the scope of the Management Team's review.

       (i)  an address;
       (ii) a description;
       (iii) a finger or voice print;
       (iv) a number; or
       (v)  a picture.

In addition, SG §10-627 establishes that a person who willfully or knowingly violates the PIA is guilty of a misdemeanor and may be liable for criminal penalties of up to $1,000.

If a custodian unlawfully discloses personnel records in violation of SG §10-616(i), the custodian may be subject to civil or criminal liability. As we have explained in this opinion, however, we do not believe that the disclosure of personnel records pursuant to the federal district court's orders in *Vaughn G.* can be deemed unlawful, because it is "otherwise provided by law."

Even if disclosure to the Management Team did not fall within an explicit exception to SG §10-616's protection of personnel records, it is unlikely that liability could be found for any action taken pursuant to the district court's orders. As the Second Circuit Court of Appeals has observed, even when an order has been entered with the consent of the parties, the order must be respected despite the possibility that compliance with it conflicts with a state law: "When the defendants chose to consent to a judgment, rather than have the District Court adjudicate the merits of the plaintiffs' claims, the result was a fully enforceable federal judgment that overrides any conflicting state law ...." *Badgley v. Santocroce*, 800 F.2d 33, 38 (2d Cir. 1986).[5]

---

[5] *Badgley* was a prison overcrowding case in which state and county defendants argued that compliance with a federal court consent limiting the population of a county prison would require correctional officials to violate state laws and risk contempt proceedings in state court. Relying on a straightforward application of the Supremacy Clause, the Second Circuit rejected this argument. 800 F.2d at 37-38. The Second Circuit dismissed the defendants' concerns with the explanation that, if state court proceedings were convened "to hold defendants in contempt for taking actions required by the judgment of the District Court, that judgment would provide a complete defense." 800 F.2d at 38.

## IV

## Redisclosure

Your final question concerns BCPS' liability for the subsequent disclosure by non-BCPS Management Team members of personnel records provided to them by BCPS. This question must be answered in two parts.

First, if information is disclosed to the State Superintendent or any other individual employed by a Maryland public agency, that individual assumes the risk of liability for his or her own improper use of those records. As an earlier opinion emphasized, PIA restrictions apply to any "custodian" of a record, and the PIA defines a "custodian" as either the "official custodian" or "any other authorized individual who has physical custody and control of a public record." 65 *Opinions of the Attorney General* at 369. *See* SG §10-616(c).

Thus, once a State employee comes into possession of personnel information pursuant to the *Vaughn G.* court orders, the employee becomes a "custodian" to whom the PIA's provisions directly apply. Should a Team member then disclose information from those files to unauthorized third parties, then that individual may well be liable under SG §§10-626 and 10-627. Because BCPS' initial disclosure to the State employee was lawful, however, there would be no basis for BCPS liability under those provisions for any later improper use of the records by the State employee members.

The status of plaintiffs' Management Team representative is less clear. Because he is not a public employee, he cannot be deemed a "custodian" for PIA purposes, and, therefore, is not bound directly to the PIA's provisions. It does not follow, however, that improper disclosure on the part of plaintiffs' representative would be free of legal consequences. The court's April order authorizes access to records "on a confidential basis"; a breach of confidentiality might be contempt of court.

Should BCPS still have concerns regarding subsequent disclosure of personnel information by plaintiffs' representative, we suggest that BCPS enter into a simple, limited confidentiality agreement with him. Such an agreement should state that BCPS is disclosing personnel information to him in accordance with the

*Vaughn G.* court orders, and that the Team member agrees not to disclose that information further.

Liability arises under SG §§10-626 and 10-627 only if a party "willfully and knowingly" permits unlawful use of a protected record. If BCPS makes clear that it is disclosing information to plaintiffs' representative only to the extent mandated by court order and secures a written commitment from the Team member not to re-disclose that information, we do not see how BCPS could be held liable for a "willful" and "knowing" violation of the PIA by virtue of any subsequent misuse of the personnel records by plaintiffs' representative.

## V

## Conclusion

In summary, it is our opinion that Management Team members are authorized to have access to the personnel records and other information regarding applicants for, and employees in, BCPS positions that affect consent decree compliance. Although that information is ordinarily protected by SG §10-616(i) against disclosure, we conclude that disclosure in this instance is "otherwise provided by law" by virtue of the federal district court's recent orders in the *Vaughn G.* action.

J. Joseph Curran, Jr.
*Attorney General*

JoAnn G. Goedert
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*